## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| MICHAEL S. GOLDBERG, LLC, and | : Case No. 09-23370 (JAM) |
| MICHAEL S. GOLDBERG, | : Substantively Consolidated |
| | : |
| Debtors. | : |
| | : |
| | : |
| JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE | : |
| SUBSTANTIVELY CONSOLIDATED ESTATE OF MICHAEL | : Case No. 3:15-cv-01687 (AWT) |
| S. GOLDBERG, LLC AND MICHAEL S. GOLDBERG, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| SALLY A. LABONTE, TRUSTEE OF THE SCOTT A. | : July 29, 2020 |
| LABONTE DYNASTY TRUST, ET AL., | : |
| | : |
| Defendants | : |

## THE TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT
## OF HIS MOTION TO DISMISS WITHOUT PREJUDICE

Pursuant to D. Conn. L. Civ. R. 7(a)(1) and Fed. R. Civ. P. 41(a)(2), Plaintiff, James

Berman, Trustee (the "Trustee"), by and through his undersigned counsel, respectfully submits his

Memorandum of Law in Support of His Motion to Dismiss Without Prejudice (the "Motion to

Dismiss").

## I.        INTRODUCTION

As the Trustee has repeatedly informed the Bankruptcy Court and other parties-in-interest

in the bankruptcy case, the Trustee has appropriately concluded that the continued prosecution of

this fraudulent transfer action will not generate any net benefit for the bankruptcy estate and,

consequently, should be dismissed without prejudice. The Trustee's attempts to collect upon the

$7.2 million judgment previously entered by this Court against Scott A. LaBonte ("SAL"),

including through the instant action, have been successfully frustrated by SAL and his co-conspirators through their fraudulent and criminal acts. Accordingly, the Trustee has commenced a separate civil action against them asserting causes of action under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), which he intends to diligently prosecute.[1]

Here, a dismissal of the instant action "without prejudice" is appropriate under the circumstances as more fully explained below. Most significantly, all fraudulent transfer causes of action asserted herein will be, upon such dismissal, ***rendered time-barred by the applicable statute of limitations***. Therefore, dismissal imposes no prejudice upon the defendants in this action (collectively, the "Defendants") and no legitimate basis exists for the Defendants to demand that this Court condition dismissal upon it being "with prejudice."

## II.      BACKGROUND

### A.  The Goldberg Scheme and the Trustee's Claims Against SAL

This action arises from the Trustee's efforts to avoid and recover fraudulent transfers for the victims of a Ponzi scheme, (the "Goldberg Scheme"), perpetrated by Michael S. Goldberg and Michael S. Goldberg, LLC, sometimes d/b/a Acquisitions Unlimited Group (collectively the "Debtors"). SAL, a defendant in this action both individually and in his capacity as a trustee of the

---

[1] On September 27, 2019, the Trustee filed an action captioned *James Berman, Trustee v. Scott A. LaBonte, Sally A. LaBonte, Scott A. LaBonte, Trustee of the Scott A. LaBonte Revocable Trust, Sally A. LaBonte, Trustee of the Scott A. LaBonte Revocable Trust, Sally A. LaBonte, Trustee of the Scott A. LaBonte Dynasty Trust, Roland G. LaBonte, Roland G. LaBonte, Trustee of the Scott A. LaBonte Dynasty Trust, Roland G. LaBonte, Trustee of the Roland G. LaBonte Revocable Trust, Marilyn P. LaBonte, Marilyn P. LaBonte, Trustee of the Marilyn P. LaBonte 2015 Revocable Trust, Marilyn P. LaBonte, Trustee of the Marilyn P. LaBonte Revocable Trust, Joseph W. Sparveri, Jr., Joseph W. Sparveri, Jr., Trustee of the Scott A. laBonte Dynasty Trust, Lawrence J. Marks, Juliano & Marks, LLC, Paul L. Bourdeau, and Robert A. Landino*, Case No. 3:19-cv-11533-VLB (the "RICO Action"), in which the Trustee asserts claims under RICO seeking to hold the defendants liable for their respective conduct in, *inter alia*, obstructing the Trustee and rendering SAL judgment proof. The RICO Action is pending before the Hon. Vanessa L. Bryant.

Scott A. LaBonte Revocable Trust (the "SAL Rev. Trust"), was an investor in and feeder to the Goldberg Scheme. Between January 15, 2008, and May 20, 2009, SAL received $7,241,797.52 in fraudulent transfers from the Debtors through his cousin Edward Malley ("E. Malley").

In May 2010, the Trustee commenced an adversary proceeding against E. Malley captioned *James Berman, Trustee v. Edward Malley, at al.*, Adv. Pro. 10-02082 (ASD) (hereinafter the "Malley Adv. Pro."). The Trustee did not initially name SAL as a defendant to the Malley Adv. Pro., but E. Malley told SAL that he had been sued by the Trustee shortly after being served with the Malley Adv. Pro. complaint in May 2010 and SAL knew that he would also be sued by the Trustee. Thus, on June 2, 2010, SAL convened a meeting (the "RICO Meeting") with his father, Roland LaBonte ("R. LaBonte"), his longtime family accountant, Joseph W. Sparveri, Jr. ("Sparveri"), and longtime trusts and estates attorney, Paul Bourdeau ("Bourdeau" collectively the "RICO Meeting Participants"), to develop and implement a plan to place his assets beyond the Trustee's reach while allowing SAL and his family unfettered access to them.

Following the RICO Meeting, the RICO Meeting Participants, along with other named defendants to the RICO Action, implemented the plan developed during the RICO meeting to insulate SAL's assets from the Trustee. A material part of the plan was for SAL to transfer virtually all of his assets, consisting primarily of interests in single purpose limited liability companies and stock in two closely held entities (the "Fraudulently Transferred Interests"), to the Scott A. LaBonte Dynasty Trust (the "SALDT"). SAL transferred the Fraudulently Transferred Interests to the SALDT in July and August, 2010, but backdated the assignment, assumption and consent agreements required to effectuate the transfers to June 2, 2010, the date of the RICO Meeting.

On November 12, 2010, the Trustee added SAL as a defendant to the Malley Adv. Pro. to avoid and recover the fraudulent transfers SAL received from the Goldberg Debtors through E. Malley. The claims asserted against, *inter alia*, E. Malley and SAL in the Malley Adv. Pro. were

tried to the Hon. Albert S. Dabrowski over a five-day period in June 2011, and post-hearing briefing was completed on November 17, 2011. Judge Dabrowski issued Proposed Findings of Facts and Conclusions of Law in the Malley Adv. Pro. on March 31, 2015, and on May 11, 2015, issued Amended Proposed Findings of Facts and Conclusions of Law (the "Amended Findings"). Judge Dabrowski retired effective April 1, 2015.[2]

SAL, along with certain entities that he dominated and controlled that the Trustee also cited-in as defendants to the Malley Adv. Pro., filed objections to a number of the Amended Findings. On September 27, 2017, this Court issued an Order Re Proposed Findings adopting the Amended Findings in all material respects and entering judgment against, *inter alia*, SAL in the amount of $7,241,797.52, together with prejudgment interest at the prime rate of 3.25% commencing November 12, 2010 (the "SAL Judgment"). (*See* Order Re Proposed Findings, issued in Civil Action No. 3:15-cv-1682 (AWT), at D.I. 815).

### B.  The Pending Action

The Trustee commenced this action on May 31, 2014, to avoid and recover the transfers of the Fraudulently Transferred Interests, and to pierce the veil of the SALDT and hold it liable for the full amount of the Trustee's claim, which became the SAL Judgment.[3] The Trustee also sought to recover:

        a.  $1,004,953 from SAL's spouse, Sally LaBonte, as a subsequent transferee of

---

[2] The Amended Findings issued after Judge Dabrowski's retirement. *See*, Malley Adv. Pro., at docket index ("D.I.") 725, n.2 (noting that the Hon. Ann Nevins and the Hon. Julie Manning consented to Judge Dabrowski issuing the Amended Findings).

[3] The Trustee's complaint in this action asserts seven claims for relief, with two of the claims for relief inadvertently designated as the Fifth Claim for Relief. The First, Second and Third claims for relief seek to recover fraudulent transfers from SAL to various defendants under the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"). The Fourth Claim for Relief seeks to pierce the veil of the SALDT and hold it liable for the full amount of the SAL Judgment. The Fifth, (2nd) Fifth and Sixth Claims for Relief seek to recover fraudulent transfers from the SALDT as the alter ego of SAL to various defendants under CUFTA.

SAL and/or the SALDT;

b.  $1,147,404 from Devcon Enterprises, Inc. ("Devcon"), the then LaBonte family closely held property management company, as a subsequent transferee of SAL and/or the SALDT;

c.  $411,000 from Marketplace Port St. Lucie ("MPSL"), an entity that SAL dominated and controlled, as a subsequent transferee of SAL and/or the SALDT;

d.  $328,671 from RCZS, LLC ("RCZS"), an entity that owned a private plane for use by SAL and its other members, including R. LaBonte, as a subsequent transferee of SAL and/or the SALDT; and

e.  $200,000 from Cakemaker LLC ("Cakemaker"), an entity that SAL controlled, as a subsequent transferee of SAL and/or the SALDT.[4]

**a.  <u>The PJR Application</u>**

On July 30, 2014, the Trustee filed a prejudgment remedy application in this action (the "PJR Application") seeking prejudgment remedies against, *inter alia,* the SALDT, Sally LaBonte, Devcon and MPSL. Judge Dabrowski conducted an evidentiary hearing on the PJR Application on November 10 and 12, 2014 and December 15, 2014. The parties completed post-hearing briefing on January 20, 2015, and Judge Dabrowski heard oral argument on February 19, 2015.

---

[4]  The Trustee named SAL as a defendant in his capacity as transferor and does not seek damages from SAL. The Trustee named R. LaBonte as a defendant in his capacity as a Trustee of the SALDT because a trust is not a separate legal entity with capacity to sue or be sued; the trustee of a trust is the correct defendant in a suit to recover trust assets. *See SCG Capital Corp. Profit Sharing Trust v. Green*, JD of Tolland, at Rockville, docket no. TTDCV095005139, 2010 Conn. Super. LEXIS 787 (Conn. Super., March 25, 2010); Fed. R. Civ. P. 17(b)(3)(capacity to sue [other than for an individual suing in her own name or a corporation] is determine by the law of the state where the court is located"). Here, the Trustee sought to avoid and recover the transfers of the Fraudulently Transferred Interests to the SALDT and to enjoin further transfer of the Fraudulently Transferred Interests, but did not seek relief against R. LaBonte individually.

Unbeknownst to the Trustee, as he was prosecuting the PJR Application in the fall of 2014 and early winter of 2015, SAL and R. LaBonte, in coordination with a number of the named defendants to the RICO Action, were transferring Devcon's assets, including its operating business, to a newly formed entity, DEI Property Management, LLC ("DEIPM"), which the LaBonte Family created for the express purpose of accepting  the transfer of Devcon's business.[5] DEIPM is and was owned by revocable trusts settled by SAL's father, R. LaBonte, and mother, Marilyn LaBonte. R. LaBonte is and has always been DEIPM's sole manager. The transfer of Devcon's assets to DEIPM was completed prior to March 30, 2015, the date that Devcon was dissolved.

**b**.  **Settlement Efforts, the Crime/Fraud Order and Multiple Stays**

This action was stayed by stipulation and order dated May 19, 2016, to permit the parties to engage in mediation. The mediation, which was conducted over three days in June and July, 2016, was unsuccessful, but the parties continued to focus on settlement throughout the first half

---

[5] In June 2017, the Trustee commenced an adversary proceeding against, among others, DEIPM to avoid and recover the transfer of Devcon's assets. *See James Berman, Trustee v. DEI Property Management, LLC, et al.* Adv. Pro. 17-02029 (the "DEIPM Adv. Pro."). In a June 2018 deposition conducted in the DEIPM Adv. Pro. R. LaBonte testified that Devcon's assets were transferred to DEIPM because the Trustee was seeking a prejudgment remedy against Devcon:

> 2  Q.   Okay.  So why did you think that Devcon
> 3  Enterprises, Inc. was going to be put out of business?
> 4  A.   Because there was a prejudgment motion or
> 5  whatever you call it against it that would have tied up
> 6  its assets and receivables.  And obviously it couldn't
> 7  have run, paid its bills if there was -- that was my
> 8  thinking.
> 9  Q.   So your thinking was Devcon Enterprises, Inc.
> 10  has a claim against it in a prejudgment remedy
> 11  application.  So the way to remedy this potential
> 12  problem is to just transfer Devcon's assets and business
> 13  to a new entity, right?
> 14  A.   Correct.

(June 12, 2018, deposition of Roland G. LaBonte, at 40(2-14), excerpts of which are attached hereto as Exhibit A). As with this action, the Trustee intends to move in the Bankruptcy Court to dismiss the DEIPM Adv. Pro. without prejudice.

of 2017. The parties engaged in a status conference with this Court on November 29, 2017. Following the status conference, the Court lifted the stay that it had entered on May 19, 2016, and entered a scheduling order. Shortly thereafter, on December 29, 2017, the Trustee filed a motion to compel seeking to require certain third-parties, including the firms of which Sparveri and Bourdeau are partners or members, to produce documents that they previously withheld from production on the basis of the attorney-client privilege. The parties conducted some written discovery while the motion to compel was pending, but depositions were held in abeyance pending a decision on the motion to compel to avoid having to conduct multiple depositions of the same witnesses.

On September 20, 2018, this Court granted the Trustee's motion to compel, finding probable cause that the crime-fraud exception to the attorney-client privilege applied because "[t]he record here contains evidence sufficient to establish probable cause to believe that a fraud was committed and that the communications at issue were in furtherance of that fraud," . . .. (*See* Ruling on Motions to Compel and Motions to Quash, D.I. 75, at 8). In response, the Trustee received supplemental productions of documents that several parties had previously withheld on the basis of the attorney-client privilege and conducted multiple depositions in October and November 2018.

In particular, the Trustee received Bourdeau's notes from the RICO Meeting (the "RICO Notes"). The RICO Notes specifically referenced a potential "claw back" by a "Hartford Trustee." The RICO Notes evidence the true purpose of the RICO Meeting: to obstruct the Trustee's recovery on account of the anticipated avoidance actions. At Bourdeau's and Sparveri's depositions, they each admitted under oath that the purpose of the RICO Meeting was to discuss and determine actions that SAL could take to put his assets beyond the reach of the Trustee. During these, and other depositions conducted in this action in October 2018, the Trustee also confirmed

that the RICO Action defendants' racketeering activities had successfully denuded SAL and the SALDT of assets that the Trustee otherwise could have recovered to satisfy the SAL Judgment and that further pursuit of this action would be futile.

On December 28, 2018, the parties filed a Joint Motion to Stay Pending Completion of Settlement Negotiations (the "Joint Motion for Stay") to once again permit the parties to pursue settlement. (*See* D.I. 84). The Court granted the Joint Motion for Stay on January 23, 2019. (See D.I. 85). Thereafter, by order dated March 15, 2019, the Court referred the parties to mediation with the Hon. Holly Fitzsimmons; the mediation failed to yield a settlement. (*See* D.I. 91).[6]

On July 22, 2019, the Trustee filed a motion with the Bankruptcy Court to amend his counsel's existing retention to permit counsel to commence and prosecute the RICO Action pursuant to a "lesser of" contingency fee arrangement (the "Motion to Amend Retention"). On July 30, 2019, the Bankruptcy Court held an omnibus hearing on a number of pending motions, including the Motion to Amend Retention. During the July 30 hearing, the Trustee's counsel informed the Bankruptcy Court that the Trustee would not further pursue pending fraudulent transfer actions against SAL, his family members, trustees and business partner, including this action, because the RICO defendants' racketeering activity had successfully frustrated the Trustee and pursuit of those claims would simply waste time, money and judicial resources. (*See* Transcript of July 30, 2019 Hearing before the Hon. Julie A. Manning, at 7(13-16); 12(8-21), excerpts of which are attached hereto as Exhibit B). The Trustee's counsel further informed the Bankruptcy Court that the Trustee intended to seek to permanently stay this action, the DEIPM Action and another related adversary proceeding captioned *James Berman, Trustee v. Robert A. Landino, et*

---

[6]  The mediation included all of the defendants to the RICO Action as the Trustee sought a global settlement of all of his SAL related claims, including the RICO claims which the Trustee had yet to file.

*al.*, Adv. Pro. No. 16-02042 (the "Landino Adv. Pro.") in favor of the RICO Action. (*Id.*, at 23(7-16)). The Defendants' lead counsel in this action, Attorney David Shaiken, was present for the July 30, 2019, hearing before Judge Manning.

      **c.**  **The Permanent Stay, January 2020 Scheduling Order and Present Status**

The July 30, 2019, hearing before Judge Manning included status conferences on the DEIPM Adv. Pro. and the Landino Adv. Pro. Counsel for the parties to this action, the DEIPM Adv. Pro. and the Landino Adv. Pro. agreed during the July 30 hearings that the then pending stays of all three actions would continue to September 15, 2019.

On September 27, 2019, the Trustee commenced the RICO Action. On September 30, 2019, the Trustee filed a Motion for Extension of Existing Stay on Consent in this action (The "September Motion"). (*See* D.I. 113). The September Motion, which was provided to Defendants' counsel for review and consent prior to filing, represents that the "parties wish to avoid the cost of prosecuting and defending this action while the RICO Action is pending." (*Id.*) On October 4, 2019, this Court granted the relief requested in the September Motion and directed that this case be administratively closed. (*See* D.I. 114).

On November 29, 2019, two (2) months after agreeing to a permanent stay, Defendants moved to lift the stay. (*See* D.I. 115). On January 6, 2020, the Court granted Defendants' motion to lift the stay and directed the parties to submit a proposed scheduling order. (*See* D.I. 120). On January 14, 2020, the Court granted the parties' jointly proposed schedule, which set deadlines for the parties to complete expert discovery, file dispositive motions and be "trial ready" by September 30, 2020. (*See* D.I. 122). Neither party has disclosed an expert or engaged in any activity in this case since the Court entered the operative scheduling order more than seven (7) months ago.

The Trustee has, however, pursued authority from the Bankruptcy Court to dismiss this action, the DEIPM Adv. Pro. and the Landino Adv. Pro. On February 28, 2020, the Trustee filed

with the Bankruptcy Court his Motion for Authority to Move Dismiss Fraudulent Transfer Actions (the "Motion for Authority"). The Trustee and his counsel concluded that Bankruptcy Court authority was required citing, *inter alia*, *United States v. Scott Cable Communs., Inc. (In re Scott Cable Communs., Inc.)*, No. 3:02CV01725 (AWT), 2007 U.S. Dist. LEXIS 65514, at *22 (D. Conn. Sept. 6, 2007) (Thompson, J.). Since May 2014, the Trustee's counsel had spent a substantial amount of time and incurred substantial fees prosecuting this action and the other fraudulent transfer actions. They constituted the most substantial assets of the bankruptcy estate and had been perceived as providing a potential source for a significant recovery in the millions of dollars. The Trustee did not believe it would be in the "ordinary course of business" to move, on his own, to dismiss these actions. The Trustee also felt compelled to ensure that the creditor-victims of the Debtors' bankruptcy estate had notice of the Trustee's intention to move to dismiss and an opportunity to be heard.[7] On July 21, 2020, the Bankruptcy Court held a status conference on the Motion for Authority. During the status conference Judge Manning indicated that, in her view, the Trustee did not require Bankruptcy Court authority to move to dismiss this action or the related adversary proceedings. Thus, at the conclusion of the status conference, the Trustee withdrew the Motion for Authority.

### d. **The Trustee Has Been Successfully Frustrated**

The Trustee based his decision to cease prosecuting this action and commence the broader and all-encompassing RICO Action on the inescapable conclusion that the continued litigation of this action will not yield any net benefit for the bankruptcy estate and, ultimately, the victims of the Goldberg Scheme. The anticipated additional cost of litigation far outweighs any reasonably foreseeable recovery.

---

[7] Counsel appeared on behalf of several of the Debtor's Estate's largest creditors to support the Motion for Authority.

When the Trustee commenced this action in May 2014, the SALDT owned interests in the following entities, all of which, save for Devcon, owned commercial real estate or an interest in an entity that owned commercial real estate:

a. Devcon: LaBonte family owned property management company. The SALDT owned one-hundred percent or nearly one-hundred percent of Devcon's stock at the time the Trustee commenced this action.

b. Devcon Manchester, LLC: Devcon Manchester owns a commercial shopping center in Manchester, Connecticut. The SALDT owns a twenty percent (20%), interest in Devcon Manchester.

c. Devcon Commons, LLC: Devcon Commons owns a commercial shopping center in Enfield, Connecticut. The SALDT owns a thirty percent (30%), interest in Devcon Commons.

d. Devcon Shops, LLC: Devcon Shops owns a commercial shopping center in Westfield, Massachusetts. The SALDT owns slightly more than a twenty-five percent (25.545%) interest in Devcon Shops.

e. Devcon Fairhaven LLC: Devcon Fairhaven owned a commercial shopping center in Fairhaven, Massachusetts. The SALDT owned slightly more than a thirty-five percent (35.5%) interest in Devcon Fairhaven.

f. RSC Gilford LLC: RSC Gilford owned a commercial shopping center in Gilford, New Hampshire. The SALDT owned a forty percent (40%) interest in RSC Gilford.

g. MPSL: MPSL owned a commercial shopping center in Port St. Lucie, Florida. The SALDT owned a thirty percent (30%) interest in MPSL.

***1. The SALDT***

*a. The Remaining Interests in the SALDT*

Discovery conducted by the Trustee in October 2018 revealed that as of October 2018, the SALDT owned interests in Devcon Shops (25%), Devcon Commons (30%), and Devcon Manchester (20%), and may own shares of Jupiter Biomedical Research, Inc.[8] *(See* October 23,

---

[8] Jupiter Biomedical Research sold stock in 2017 in a private placement, it does not have a website, does not appear to have any business, the Trustee is unaware of any market for its stock, and the stock appears to have little if any value. Moreover, there is no record in the SALDT bank account statements of the SALDT actually paying $25,000 to purchase Jupiter Biomedical Research stock, and the Defendants have not produced a Jupiter Biomedical Research subscription agreement countersigned by Jupiter Biomedical Research.

2018, deposition of Scott A. LaBonte ("SAL Oct. 2018 Tran."), conducted in this action, at 14(25)-15(23)).[9]

The anchor tenant of the shopping center owned by Devcon Shops vacated its leasehold in 2018 in connection with its bankruptcy filing. SAL testified in October 2018 that the shopping center, which was fifty-percent (50%) vacant at the time, would likely be lost to foreclosure due to its high vacancy rates. (*See* SAL Oct. 2018 Tran., at 214(2)-215(13)). Moreover, Richard Polidori, the settlor of a trust that owns an interest in Devcon Shops, informed the Trustee's counsel in January 2019, that Devcon Shops required capital contributions from him and R. LaBonte to continue operations. The Trustee has no reason to believe that Devcon Shops' present financial situation is any less precarious, especially in light of the Covid-19 Pandemic's detrimental effect on the ability of commercial real-estate tenants to pay monthly rent.

In addition, SAL testified in October 2018 that Devcon Manchester had made "nominal" distributions to the SALDT in 2018; (*See* SAL Oct. 2018 Tran., at 215(21)-216(7)); and that in 2018 Devcon Commons had only made sporadic distributions of "a few hundred bucks a month" to the SALDT (*Id.*, at 216(8-24). Devcon Commons distributions were limited by the "substantial" deferred preferred return owed to its preferred members. (*Id.*, at 216(13-21). The SALDT receives a "very, very nominal amount of preferred return on its own because it has practically no equity on the deal." (*Id.*, at 216(8)-217(7)). The Trustee has no reason to believe that the financial condition of Devcon Commons or Devcon Manchester have improved.

### b. *Devcon*

In March, 2015, SAL dissolved Devcon, which likely was the most valuable of the SALDT's assets when the Trustee commenced this action. SAL, R. LaBonte and certain Rico

---

[9] Cited excerpts from the SAL Oct. 2018 Tran., are attached hereto as Exh. C.

Action defendants fraudulently transferred its assets, including its operating business, to DEIPM. The Trustee has no hope of collecting anything from Devcon.

### c.  RSC Gilford

RSC Gilford sold its single asset in or about January 2016, and SAL dissolved it on November 15, 2017. DEIPM received a fee of $800,000 from the sales proceeds. Devcon would have received this payment if SAL and others had not fraudulently transferred its business to DEIPM.[10]

### 2.  Sally LaBonte

The Trustee seeks to avoid and recover $1,004,953 in fraudulent transfers received by Sally LaBonte from SAL and/or the SALDT.

When this action was commenced Sally LaBonte owned a home in Farmington, Connecticut through the Sally A. LaBonte Revocable Trust (the "Sally Rev. Trust"). Sally LaBonte sold the Farmington home in April 2018.

The Sally Rev. Trust presently owns a 99.99% interest in a home in Portsmouth, Rhode Island (SAL owns the remaining .01%) (the "Portsmouth Property"). The Trustee placed a judgment lien on SAL's interest in the Portsmouth property after the SAL Judgment entered. Counsel for the Trustee recently received a call form a realtor representing SAL and Sally LaBonte asking for consent to release the judgment lien to allow a short-sale. Assuming this sale closes, the Portsmouth property will sell for approximately $600,000 less than the amount owed on the first mortgage, which is nearly $3,000,000. The Trustee is unaware of any other assets owned by Sally

---

[10] The single asset owned by Devcon Fairhaven, a shopping center in Fairhaven, Massachusetts, was foreclosed and repossessed by its lender in or about 2016. The single asset owned by MPSL, a shopping center in Port St. Lucie Florida, was foreclosed by its lender as of August 22, 2017, and sold in or about July 2018. RZCS and Cakemaker, both named defendants, sold their respective single asset before the Trustee commenced this action. SAL dissolved Devcon Fairhaven MPSL, RCZS and Cakemaker, and the Trustee has no hope of collecting anything from any of them.

LaBonte that could come anywhere close to satisfying her liability to the Trustee (or funding the cost of this litigation).[11]

## III.   ARGUMENT

Fed. R. Civ. P. 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), [which does not apply here,] an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." "[T]he decision to grant a motion for voluntary dismissal without prejudice lies within the sound discretion of the trial court." *Ultimate Nutrition, Inc. v. Diamond Drinks, Inc.*, 2007 U.S. Dist. LEXIS 70412, *3 (D. Conn., Sept. 24, 2007). "[A]lthough voluntary dismissal without prejudice is not a matter of right, the presumption in this circuit is that a court should grant dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 31 (S.D.N.Y. 2009) (citations omitted). Significantly, "[t]he mere prospect of a second lawsuit or some tactical disadvantage is not sufficient legal prejudice to prevent a Rule 41(a)(2) dismissal." *Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996) (citations omitted).

In deciding whether to grant a motion to dismiss without prejudice courts in the Second Circuit apply five factors first enumerated in *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990):

> In exercising [its] discretion, the Second Circuit has instructed district courts to consider the following factors, the so-called "*Zagano* Factors": '(1) the plaintiff's diligence in bringing the motion; (2) any 'undue vexatiousness' on plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's efforts and expenses in preparation for trial, (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss.'

---

[11]   The Trustee is aware that Sally LaBonte recently became licensed as a Real Estate Sales Person in Rhode Island and also appears to be employed in that capacity in Rhode Island. In the Trustee's judgment, the prospect of her generating some income as a real estate sales person in the future does not warrant the Trustee's continued prosecution of this action.

*Ultimate Nutrition, Inc.*, 2007 U.S. Dist. LEXIS 70412, at \*3, *quoting Zagano*, 900 F.2d at 14. Each of the *Zagano* factors weighs in favor of dismissing this action without prejudice.

    **A.  <u>Dismissal Will Not Impose Substantial Prejudice Upon Defendants</u>**

       **a.  <u>The Trustee's Fraudulent Transfer Claims Will be Time-Barred<br>Upon Their Dismissal Without Prejudice</u>**

The Trustee has no intention of commencing a new action asserting the fraudulent transfer or veil piercing claims that he pled in this action. Regardless, as soon as this Court enters an order dismissing this action without prejudice, the asserted fraudulent transfer claims will be rendered time barred:

> It is true that "a suit dismissed without prejudice . . . 'is treated for statute of limitations purposes as if it had never been filed.'" . . . That is, "once a suit is dismissed, even without prejudice, 'the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.'" . . . Thus, "if the statute of limitations has run the dismissal is effectively with prejudice," . . ., and the "plaintiff's subsequent court filing is vulnerable to a time-bar, . . . .

*Cowan v. Cahill*, 2016 U.S. Dist. LEXIS 130271, \*10-\*11 (D. Conn., Sept. 23, 2016) (citations omitted) (initial ellipsis in original). *See also Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996) ("But where the action has been dismissed without prejudice, a Plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt the running of the limitations period, even though designated to be without prejudice.") (citations omitted).

The Trustee asserted fraudulent transfer claims under CUFTA, which has a statute of limitations of four years from the date of the transfer or one year from when the transfer was or reasonably could have been discovered by the plaintiff. *Conn. Gen. Stat.* §52-552j. Under either scenario, the claims will be time-barred upon this action's dismissal. The latest to occur of all of the transfers sought to be avoided by this action took place on November 14, 2013- more  than

four years ago. *See* July 25, 2014, Affidavit of Robert Glasser in Support of Application for Prejudgment Remedy, docketed in Adv. Pro. 14-02026 at D.I., 7-1, at Schedule 1. The Trustee had also, obviously, discovered the transfers sought to be avoided prior to and no later than the date he commenced this action on May 31, 2014- which is also more than four years ago. Therefore, a dismissal without prejudice cannot unfairly prejudice the Defendants' rights or subject them to additional litigation. *See Ultimate Nutrition, Inc.*, 2007 U.S. Dist. LEXIS 70412, at \*4 ("While no single *Zagano* factor is dispositive, courts generally allow dismissal without prejudice absent a showing that defendants will be substantially prejudiced as a result.").[12]

Defendants will undoubtedly argue that this Court should condition the dismissal of the Trustee's claims upon it being "with prejudice" so they may attempt to assert that *res judicata* or collateral estoppel applies to the Trustee's distinct RICO claims asserted against them in the RICO Action. The desire to extract a strategic advantage in separate litigation is not a legitimate justification to require a dismissal with prejudice:

> The defendant contends that the plaintiff seeks a dismissal in order to avoid an adverse judgment on the summary judgment motion that would have collateral estoppel or res judicata effect in subsequent litigation.
> The defendant has not demonstrated legal prejudice sufficient to bar the plaintiff's motion for a voluntary dismissal of the action under Rule 41(a)(2).

---

[12] As to the single alter ego/veil piercing claim against SALDT alleged in the Complaint's Fourth Claim for Relief, several superior court decisions have held that the statute of limitations for a veil piercing claim to enforce an underlying judgment is governed by the same twenty-year statute of limitations as applied to the enforcement of judgments. *See Chro ex rel. Doe v. Travel & Tour Servs.*, J. D. of Hartford – New Britain, at Hartford, docket no. CV 92 0519557, 1994 Conn. Super. LEXIS 1806, \*5-7 (Conn. Super., July 12, 1994); *Pullicino v. Jensen*, J.D. of Waterbury, docket no, CV-13-6019108-S, 2013 Conn. Super. LEXIS 2974, \*6-9 (Conn. Super., Dec. 27, 2013). Regardless of whether the veil piercing claim against the SALDT would be time-barred upon this action's dismissal, as explained below, the relevant factors weigh decidedly in favor of dismissal without prejudice. At this point in time, the SALDT has no meaningful assets and, therefore, the Trustee has concluded that no net economic benefit could be derived from litigating this claim against SALDT. A dismissal without prejudice would impose no prejudice upon the SALDT.

*Jaskot*, 167 F.R.D. 372, at 374.[13] The denial of an opportunity to manufacture an argument does not amount to substantial prejudice to the Defendants. *See id.* at 373. Because the causes of action asserted herein will be barred upon their dismissal by the applicable statute of limitations, there is no prejudice to the Defendants in their dismissal without prejudice.

> **b.  The _Zagano_ Factors Weigh Decidedly in Favor of Dismissal Without Prejudice**

> ### *1.  The Trustee was Diligent in Bringing his Motion to Dismiss*

The application of the *Zagano* factors further support this Court not conditioning a dismissal upon it being with prejudice. The Trustee has acted diligently in seeking dismissal once dismissal became appropriate.

The Trustee concluded in the fall of 2018 that he had been successfully frustrated in his efforts to enforce the SAL Judgment and that his continued pursuit of this action would be futile. Accordingly, he drafted his complaint asserting his claims under RICO against SAL and SAL's co-conspirators and delivered it to their respective counsel in December 2018, in the hopes of initiating meaningful settlement discussion. The Trustee was successful in this regard and in January 2019, the Court stayed this action by agreement of the parties so they may pursue settlement discussions. They, unfortunately, were not fruitful.

Counsel for the Trustee then informed the Bankruptcy Court during a July 2019 hearing attended by Defendants' lead counsel that the Trustee was not pursing this action and would seek to have it permanently stayed. In September 2019, the parties agreed to make the stay permanent. The Trustee expected the permanent stay to remain in place while he pursued the RICO Action,

---

[13]  The Trustee disputes the applicability of collateral estoppel or *res judicata* under these circumstances but, regardless, seeks to avoid even having to address this issue in the RICO Action.

especially after this Court moved this action to the inactive docket on October 4, 2019, but on November 29, 2019, the Defendants moved to lift the stay of this action which the Trustee opposed.

The Trustee had no reason to move to dismiss this action until the Court lifted the stay and entered a scheduling order on January 14, 2020. Thereafter, the Trustee expeditiously moved for Bankruptcy Court authority to move to dismiss this action. He filed such motion with the Bankruptcy Court on February 28, 2020.  The Defendants objected (even though they indisputably lacked standing). At the initial hearing held on May 12, 2020, the Bankruptcy Court heard argument from the parties and concluded that the matter should be continued to a date to be determined by the Bankruptcy Court. No action having been taken by June 16, 2020, the Trustee requested a status conference which the Bankruptcy Court granted and scheduled for July 21, 2020. At the status conference, the Bankruptcy Court informed the Trustee that she had concluded that he did not need her authority before moving to dismiss this action. The Trustee withdrew his Motion for Authority and filed his motion to dismiss within eight (8) days thereafter.

Furthermore, although a scheduling order entered on January 10, 2020, neither party has disclosed an expert or otherwise performed any substantive work related to this case since the Court entered a scheduling order on January 10, 2020.

### 2.   The Trustee has not Engaged in any Undue Vexatiousness

". . . [C]ourts find 'ill-motive' where plaintiffs have assured the court and the defendants that they intended to pursue their claims prior to seeking a dismissal." *A.V. by Versace, Inc.*, 261 F.R.D. 29, at 32 (citations omitted). As discussed above, the Trustee informed the Defendants more than a year and a half ago and the Bankruptcy Court approximately a year ago that he did not intend to pursue the causes of action asserted in this action. The Trustee's actions vis-à-vis this action have been perfectly consistent with that position including by seeking various stays.

### 3.   *The Parties do not have a Trial Date and Have not Prepared for Trial*

This action has been pending since May 2014, but during a substantial portion of that time it was stayed to permit the parties to pursue discovery. Moreover, other than (i) filing a joint status reports and motions to stay, (ii) limited proceedings related to defendants' motion to lift the stay, and (iii) filing a scheduling order, there has been no activity in this case since the parties jointly moved to stay it in December 2018. *See A.V. by Versace, Inc.*, 261 F.R.D. 29, at 32 (dismissal without prejudice was not prejudicial to defendants in action that had been pending for more than a decade because there had been "minimal activity [in the case] over the last year" and the "activity over the last few years relates to the various contempt proceedings and the Permanent Injunction, not to the monetary damages claims that [plaintiff] now seeks to dismiss"). In this case, there has been no substantive activity related to the Trustee's claims for relief since the parties filed the joint motion for stay in December 2018, more than eighteen (18) months ago. *See Jaskot*, 167 F.R.D. 372, at 374 (noting that defendant would not be prejudiced by dismissal without prejudice because much of the delay in the case was caused by "prolonged settlement discussions").

### 4.   *Discovery from this Action May be Used in the RICO Action*

The Trustee will not and cannot recommence an action asserting the same claims for relief that are asserted in this action against the Defendants. Therefore, there will not be any duplicative expense from re-litigation of the asserted claims.

The Trustee has commenced the RICO Action and some of the facts that support the Trustee's claims for relief in this action also support the Trustee's RICO claims. Thus, the parties will be able to utilize the discovery taken in this action in the RICO Action. Indeed, in their November 22, 2019, Report of Parties Planning Meeting, the parties to the RICO Action agreed that:

> [P]rior testimony of a party may be used in this action in a manner consistent with Fed. R. Civ. P. 32(a). The parties' agreement regarding the use of prior testimony is solely intended to promote the just, speedy and inexpensive resolution of this action. Nothing herein shall preclude a party from conducting depositions of parties or third-parties.

(November 22, 2019, Report of Parties Planning Meeting, filed in the RICO Action, D.I. 45, at 15).[14] Courts routinely find a lack of prejudice where discovery in one case can be used in a subsequent case. *See Ultimate Nutrition, Inc.*, 2007 U.S. Dist. LEXIS 70412, at *5-*6 ("Fourth, dismissal without prejudice will not result in any substantial duplicative expense. Whatever efforts have been expended on discovery will be of value in the state court action that Ultimate Nutrition has filed."); *Jaskot*, 167 F.R.D. 372, at 374 ("[T]he mere fact that the plaintiff may seek to include the allegations contained in the complaint in a subsequent proceeding is not sufficient legal prejudice. In any event, the time and expense the defendant incurred to gather the facts, file a motion to dismiss, and conduct discovery will not be wasted if these allegations do in fact appear in a subsequent complaint.").

### 5.   *The Trustee Moves to Dismiss Because this Action Presents No Reasonable Prospect for a Net Recovery for the Estate*

As explained more fully above, Devcon transferred its assets to DEIPM in the first quarter of 2015 and SAL dissolved it in March 2015. Sally LaBonte is in the process of selling a luxury residence in Portsmouth, Rhode Island in a short-sale, and does not own any other material assets. The SALDT owns interest in three shopping centers, none of which, as of the fall of 2018, made more than *de minimis* distributions to the SALDT. SAL dissolved Defendants RZCS, LLC, Cakemaker, LLC and MPSL and there is no hope of recovery from any of them. Under these circumstances, even if the Trustee obtained a judgment in this action (which he would if he

---

[14]  The Court has not entered a Scheduling Order in the RICO Action.

completes a trial), he would not be able to recover upon it in any material respect, and the cost to obtain it would be far greater than the amount, if any, that he could recover.

Courts will grant motions to dismiss without prejudice where, as here, dismissal is sought because the defendant could not satisfy the prospective judgment. *See A.V. by Versace, Inc.*, 261 F.R.D. 29, at 33 ("Finally, Gianni has offered a good explanation as to why it wishes to dismiss the remaining claims. Specifically, it is entirely reasonable for Gianni to discontinue litigating claims for monetary damages against [defendants] where [they] would be unable to pay any judgment Gianni successfully obtains."). *See also*, *In re Solv-Ex Corp. Sec. Litig.*, 198 F.Supp. 2d 587, 595 (SDNY 2002) ("Plaintiffs' rationale for their request to dismiss this case - - that the Individual Defendants lack the financial resources to satisfy a potential judgment - - is appropriate.")

Thus, the application of the *Zagano* factors to the circumstances presented in this action establish the appropriateness of dismissing this action without prejudice.

## IV.     CONCLUSION

For all of the foregoing reasons, the Trustee respectfully submits that this Court should grant the Trustee's Motion to Dismiss without prejudice and enter such further and other relief as the Court deems just and proper.

> James Berman, Chapter 7 Trustee for the
> Substantively Consolidated Estate of Michael S.
> Goldberg, LLC and Michael S. Goldberg
>
> By: */s/ Stephen M. Kindseth*
> Stephen M. Kindseth (ct14640)
> James M. Moriarty (ct21876)
> ZEISLER & ZEISLER, P.C.
> 10 Middle Street, 15th Floor
> Bridgeport, Connecticut 06604
> Tel: (203) 368-4234
> Email: skindseth@zeislaw.com
>         jmoriarty@zeislaw.com

21

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| MICHAEL S. GOLDBERG, LLC, and | : Case No. 09-23370 (JAM) |
| MICHAEL S. GOLDBERG, | : Substantively Consolidated |
| | : |
| Debtors. | : |
| | : |
| | : |
| JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE | : |
| SUBSTANTIVELY CONSOLIDATED ESTATE OF MICHAEL | : Case No. 3:15-cv-01687 (AWT) |
| S. GOLDBERG, LLC AND MICHAEL S. GOLDBERG, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| SALLY A. LABONTE, TRUSTEE OF THE SCOTT A. | : July 29, 2020 |
| LABONTE DYNASTY TRUST, ET AL., | : |
| | : |
| Defendants | : |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 29th day of July, 2020, the foregoing

Memorandum in Support of Plaintiff's Motion to Dismiss Without Prejudice was electronically

filed. Notice of this filing will be sent electronically to all registered e-filers in this case by

operation of the Court's electronic filing system. Parties may access this filing through the

Court's CM/ECF system.


*/s/ Stephen M. Kindseth*
Stephen M. Kindseth (ct14640)